**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

SHANA DENNY, Individually and All Others Similarly Situated,

Plaintiff,

vs.

WALMART INC.,

Defendant.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiff, Shana Denny ("Plaintiff"), by and through her attorneys, brings this action individually and on behalf all others similarly situated against WALMART INC. ("Defendant" or "WALMART" as referred to hereafter). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from at least one Defendant.

2. This Court has personal jurisdiction over Defendant. Defendant has sufficient minimum contacts with the state of Florida and purposefully availed themselves, and continue to avail themselves, to the jurisdiction of Florida through the privilege of conducting its business ventures in the state of Florida, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

3. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendant does business throughout this district, and Plaintiff made her purchase of WALMART Avocado Oil Products ("Avocado Oil" or "Products") in Brevard County, Florida, from a retailer in this district and the purchased WALMART Avocado Oil Products ("Avocado Oil" or "Products") were delivered to, and used, in this district.

## THE PARTIES

4. Plaintiff Shana Denny is a natural person and a citizen and resident of Brevard County, Florida. Plaintiff purchased WALMART Avocado Oil Products ("Avocado Oil" or "Products") from a local WALMART Store. She purchased the Products for her personal use during the applicable statute of limitations in Brevard County, Florida. Plaintiff Shana Denny's most recent purchase was Defendant's WALMART Avocado Oil Products ("Avocado Oil" or "Products"), which were

purchased at a WALMART Store for approximately $14.99 during the applicable time period. Prior to purchasing the Products, Plaintiff saw and read the packaging which is sold under the label WALMART “Avocado Oil”. Plaintiff reasonably believed that the product she purchased was comprised of Avocado Oil exclusively. The Plaintiff was not aware that the product contained a variety of other oils. Had Plaintiff known that the Products were not Avocado Oil exclusively she would not have purchased the Products.

5. Plaintiff would not have purchased the Products if she knew that the product was not purely avocado oil but was adulterated with a number of other oils.

6. Plaintiff would purchase the Product in the future; however, Plaintiff cannot now or in the future rely on the representations on the Product’s labels because she cannot know whether the contents remain false, and she may reasonably, but incorrectly, assume the Products were improved.

7. Defendant WALMART is a Delaware Corporation, with its principal place of business located at 702 SW 8th Street, Bentonville, AR 72716.

8. WALMART has labeled, advertised, distributed, and sold the Products for sale at its locations in Florida during the statute of limitations period under its private label brand.

9. Defendant manufactures, markets, advertises, and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading, and deceptive advertisements, packaging, and labeling of its Products.

## FACTUAL ALLEGATIONS

### A. Introduction

10. Supermarkets today are stocked with a variety of cooking oils. Customers can choose different cooking oils based on factors such as taste, uses, health benefits, and price.

11. But because avocado oil is more expensive to produce, some makers cut corners. They substitute other oils or mix avocado oil with cheaper seed oils. They sell avocado oil that is impure and adulterated. Consumers are harmed. They buy products labeled "avocado oil," believing that they are buying pure avocado oil, and in fact, receive impure oil that is mixed and adulterated.

12. Defendant Walmart Inc. ("Walmart" or "Defendant") makes, markets, and sells Great Value brand avocado oil. The bottle prominently states that it contains only avocado oil. The bottle is labeled "Refined Avocado Oil," and has pictures of avocados. The ingredient list also lists only "avocado oil." But the truth is, it is not pure avocado oil. Instead, testing has shown that the oil is adulterated and impure.

13. In June of 2024, Plaintiff Shana Denny purchased a bottle of Great Value Refined Avocado Oil from a Walmart store while living in Brevard County, Florida.

When Plaintiff purchased the product, the package prominently stated "Avocado Oil." She read and relied on this statement, and believed she was purchasing pure avocado oil. However, a recent study shows that this is not true; Defendant's avocado oil is adulterated and impure. Plaintiff was harmed and brings this lawsuit on behalf of herself and a class of consumers that purchased Defendant's avocado oil.

**B. Consumers want pure avocado oil and are willing to pay more for it.**

14. "Avocado oil is a rising star in the culinary world."[1] It "has generated growing interest among consumers due to its nutritional and technological characteristics."[2] Avocado oil "is delicious, nutritious, and easy to use. It's rich in oleic acid, polyunsaturated fats, carotenoids, and other antioxidant-rich nutrients that are linked to improved heart, skin, and eye health."[3] It has a variety of health benefits, and may reduce arthritis and improve skin. It also has a high heat point, which makes it suitable for high-heat cooking.[4] "[A]vocado oil has established itself as an oil that has a very good nutritional value at low and high temperatures."[5]

[1] www.washingtonpost.com/wellness/2024/08/27/avocado-oil-adulteration-tests/
[2] www.ncbi.nlm.nih.gov/pmc/articles/PMC6600360/
[3] www.healthline.com/nutrition/9-avocado-oil-benefits
[4] www.healthline.com/nutrition/9-avocado-oilbenefits#TOC_TITLE_HDR_2
[5] www.ncbi.nlm.nih.gov/pmc/articles/PMC6600360/; https://healthnews.com/nutrition/healthy-eating/why-you-should-start-replacing-canolaoil-with-avocado-oil/

15. Due to its numerous health benefits, avocado oil is highly sought after by consumers, who are often willing to pay a premium for it. In fact, avocado oil can be priced up to four times higher than its competitor, canola oil.[6]

**C. Scientific research reveals problems with avocado oil labeling.**

16. Unfortunately, "due to the lack of enforceable standards, consumers are unprotected from fraud (i.e., economic motivated adulteration)" in the avocado oil marketplace.[7] Because it costs a lot more to make 100% pure avocado oil than an impure or adulterated oil (e.g. one containing a mix of avocado and other oils), bad actors can increase their profits by selling impure or mixed oils as pure avocado oil.[8] "Oils that are of poor quality or blended with cheaper edible oil can be traded and sold"[9] to unknowing consumers. Consumers purchase the inauthentic products and pay the higher prices, believing that they are purchasing pure avocado oil with its corresponding benefits.

17. A group of scientists at University of California, Davis recently tested a variety of commercially available avocado oil for purity.

---

[6] https://healthnews.com/nutrition/healthy-eating/why-you-should-start-replacing-canola-oil-with-avocado-oil/
[7] Green, H. S.; Wang, S. C. Food Control, 2020, 116, 107328: "First report on quality and purity evaluations of avocado oil sold in the US", available at https://www.sciencedirect.com/science/article/pii/S0956713520302449
[8] Green, H. S.; Wang, S. C. Food Control 2023, 152, 109837 "Purity and quality of private labeled avocado oil," available at https://www.sciencedirect.com/science/article/pii/S0956713523002372
[9] 0 Green, H. S.; Wang, S. C. Food Control, 2020, 116, 107328: "First report on quality and purity evaluations of avocado oil sold in the US", available at https://www.sciencedirect.com/science/article/pii/S0956713520302449

18. They found that many retailers were selling adulterated avocado oil. Almost 70% of the avocado oils tested were "rancid or mixed with other oils."[10]

**D. Defendant's avocado oil labeling is false and misleading.**

19. Defendant sells Great Value Avocado Oil (the "Product"). Defendant's labels prominently state that the Product is avocado oil. The front of the bottle prominently states "Avocado Oil," and includes images of avocados.




20. The ingredients list only a single ingredient: Avocado Oil.

[10] https://www.ucdavis.edu/food/news/70%25-private-label-avocado-oil-rancidor-mixed-other-oils




21. Based on each of these representations, reasonable consumers believe that the bottle contains avocado oil, and only avocado oil. Reasonable consumers expect that the words "Avocado Oil" means that the bottles contain avocado oil, not some oil that is adulterated, mixed with other oils, or is impure. Similarly, when reasonable consumers see the sole ingredient: "avocado oil," they expect that the product only includes that sole ingredient: avocado oil. No reasonable consumer expects that a bottle labeled "Avocado Oil," has photos of avocados, and lists only "avocado oil" as its ingredient contains other, cheaper, non-avocado oils. In short, reasonable

consumers reasonably believe that they are receiving a product that contains pure avocado oil.

22. But, scientific testing shows that the avocado oil is impure. The University of California, Davis researchers who study avocado oil purity recently revealed the names of the avocado oils that had tested impure in their study. The list included Defendant's Great Value avocado oil. [11]

23. The inaccurate labeling of Defendant's product is highly material to reasonable consumers. Consumers who purchase avocado oil are choosing it and paying more for it, because they believe it has benefits over other oils. They are choosing to pay more because they believe that the product they are receiving is pure avocado oil, and not an oil that is adulterated with cheaper oils.

24. Defendant knows, or reasonably should know, that its labeling is misleading customers. Since at least 2020, the avocado oil industry has been aware that there are problems with adulteration and purity of avocado oils. See, e.g., https://www.sciencedirect.com/science/article/pii/S0956713520302449.

25. As a distributor and seller of cooking oils, Defendant is aware of industry studies and trends, and aware of the problems with impurity and adulteration in the avocado oil market. Defendant is aware of, willfully blind to, or negligent with respect to the fact that the avocado oils that it sells are impure. Indeed, if Defendant

[11] https://www.washingtonpost.com/wellness/2024/08/27/avocado-oiladulteration-tests/

tested its own avocado oils before putting them on the market, it would know that its avocado oils are impure and adulterated. Given the pervasive problems with avocado oil adulteration, any reasonable maker, seller, or distributor of avocado oil would test its own products.

**E. Defendant overcharges its consumers**.

26. Defendant's false and misleading labeling allows Defendant to charge higher prices for its products. As explained above, consumers are willing to pay substantially higher prices for avocado oil. If Defendant told the truth— that its oils are impure, and adulterated with other oils— the price of its avocado oil would drop dramatically. If consumers knew the truth— that the product did not contain 100% pure avocado oil— they would not pay the current prices for the products. Indeed, as described above, other oils sell for substantially less than pure avocado oil. Accordingly, if Defendant accurately labeled its products, it would have had to lower the price, and Plaintiff and class members would have paid less.

27. Thus, Plaintiff and each class member paid a substantial price premium because of Defendant's false and misleading labeling. Plaintiff paid more for a superior product worth more, and received an inferior product that was inaccurately labeled. Plaintiff and the class therefore sustained an economic injury and paid a price premium as result of Defendant's false and misleading labels.

**F. Plaintiff was misled and harmed by Defendant's false and misleading labeling.**

28. In July of 2024 Plaintiff purchased a bottle of Great Value Refined Avocado Oil from a Walmart store while living in Brevard County. The package prominently stated "Avocado Oil" and had pictures of avocados. The ingredient list also listed only avocado oil. Ms. Denny read and relied on these statements when purchasing the Product. She would not have purchased the Product at the price she paid if she had known that the Product was contaminated with other oils, and that it was not pure avocado oil.

29. Plaintiff wants Walmart to fix its practices and sell avocado oil with accurate labeling. If Walmart fixes their Products, so that the avocado oil is actually pure and not contaminated with other oils, she will buy them again. But given Walmart's past deception, Plaintiff cannot rely on Walmart's word alone that it has fixed the problem. Plaintiff faces an imminent threat of harm because she will not be able to rely on Walmart's labels in the future and will not be able to buy Great Value Avocado Oil, even if Walmart claims to have fixed the issue. To buy Walmart's Products again, Plaintiff needs the Court to enter an order forbidding Walmart from claiming that its avocado oil contains only "avocado oil," unless the avocado oil actually is pure and not contaminated with other oils.

## PLAINTIFF SPECIFIC ALLEGATIONS

30. Plaintiff is a Florida resident who places a high priority on health and cholesterol, and on the adverse health consequences of ingredients in products that she buys. In shopping for groceries and food products for her and her family, Plaintiff was particularly concerned about cost-effectiveness and purchasing pure olive oil. Based on the statements made by Defendant, their widely recognized name, and lack of information that the Products contained other oils, Plaintiff believed the Avocado Oil was pure and safe to consume. Plaintiff paid an ascertainable premium in the purchase price for Defendant's product and should also be entitled to a full refund. Defendant's representations and omissions of other ingredients on the label were material to Plaintiff.

31. Plaintiff bought and consumed WALMART Avocado Oil Products throughout the applicable time period. Plaintiff was unaware when she bought the Avocado Oil Products that the Product contained other oils. Had Defendant been truthful and told Plaintiff that the Avocado Oil was not pure, she would not have purchased WALMART Avocado Oil Products.

32. Plaintiff suffered an ascertainable economic loss because of Defendant's statements and misrepresentations in that she bought the Avocado Oil Products that she would not have bought but for Defendant's statements and misrepresentations.

## CLASS ACTION ALLEGATIONS

33. **Class Definition:** Plaintiff brings this action on behalf of herself and the following Classes pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and/or (b)(3). Specifically, the Classes are defined as:

National Class: All persons in the United States who purchased the Products during the fullest period of law.

34. In the alternative, Plaintiff brings this action on behalf of the following state sub-class:

**Florida Sub-Class:** All persons in the State of Florida who purchased the Products during the fullest period of law.

35. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

36. **Numerosity and Ascertainability:** Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout Florida and the United States. While the exact number and identities of the Class members are unknown at this time, such

information can be ascertained through appropriate investigation and discovery, including Defendant's records, either manually or through computerized searches.

37. **Typicality and Adequacy:** Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

38. **Commonality:** The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

a. whether Defendant committed the conduct alleged herein;

b. whether Defendant's conduct constitutes the violations of laws alleged herein;

c. whether Defendant's labeling, sale, and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

d. whether the WALMART Avocado Oil Products ("Avocado Oil" or "Products") are adulterated and/or misbranded under Florida or federal law;

e. whether Defendant knew or should have known that the representations were false or misleading in that only Avocadoes was listed in the ingredients list on the packaging;

f. whether Defendant knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the WALMART Avocado Oil Products ("Avocado Oil" or "Products");

g. whether Defendant's representations, concealments and non-disclosures concerning the WALMART Avocado Oil Products ("Avocado Oil" or "Products") are likely to deceive the consumer;

h. whether Defendant's representations, concealments and non-disclosures concerning the WALMART Avocado Oil Products ("Avocado Oil" or "Products") violate FDUTPA and/or the common law;

i. whether Defendant should be permanently enjoined from making the claims at issue; and

j. whether Plaintiff and the Class are entitled to restitution and damages.

39. **Predominance and Superiority:** Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and

impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b. when Defendant's liability has been adjudicated, claims of all Class members can be determined by the Court;

c. this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d. without a class action, many Class members would continue to suffer injury, and the Defendant's violations of law would continue without redress while the Defendant continues to reap and retain the substantial proceeds of their wrongful conduct.

83. **Manageability:** The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

**COUNT I**

**For Violations of Florida's Deceptive**

**and Unfair Trade Practices Act,**

**Fla. Stat. 501.201 et seq.**

84. Plaintiff realleges and incorporates by reference each of the allegations contained in the paragraphs above as if fully set forth herein.

85. Plaintiff brings this claim on their own behalf and on behalf of each member of the Class.

86. Defendant violated and continue to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

87. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that the WALMART Avocado Oil Products ("Avocado Oil" or "Products") were purely comprised of Avocado Oil.

88. Plaintiff and Class members relied upon these advertisements in deciding to purchase the WALMART Avocado Oil Products ("Avocado Oil" or "Products").

89. Plaintiff's reliance was reasonable because of Defendant's reputation as a reliable company.

90. Had Plaintiff known that the WALMART Avocado Oil Products ("Avocado Oil" or "Products") were not as advertised, they would not have purchased the product. As a result of Defendant's deceptive and unfair acts, Plaintiff and Class members have been damaged.

91. Defendant's conduct offends established public policy, and is immoral, unethical, oppressive, and unscrupulous to consumers.

92. Plaintiff and Class members are entitled to a refund or damages in an amount to be proven at trial.

93. Defendant should also be ordered to cease their deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that its WALMART Avocado Oil Products ("Avocado Oil" or "Products") contain other oils.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court:

a. Certify this action as a class action;

b. Award a full refund, compensatory, statutory damages as to all Counts where such relief is permitted by law;

c. Enjoin Defendant's conduct and order Defendant to engage in a corrective advertising and labeling/disclosure campaign;

d. Award equitable monetary relief, including a full refund or other restitution;

e. Award pre-judgment and post-judgment interest at the legal rate;

f. Award Plaintiff and Class members the costs of this action, including reasonable attorneys' fees, costs, and expenses; and

g. Award such other and further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: October 23, 2024

s/William C. Wright

WILLIAM WRIGHT
The Wright Law Office
FL Bar No. 138861
willwright@wrightlawoffice.com
Kelly Mata
kellymata@wrightlawoffice.com
FL Bar No. 1015921
515 N. Flagler Drive
Suite 350
West Palm Beach, FL 33401
Telephone: (561) 514-0904